# IN THE COURT OF APPEALS OF IOWA

No. 15-2113
Filed February 8, 2017

**JASON GRONTSAL,**
      Applicant-Appellant,

**vs.**

**STATE OF IOWA,**
      Respondent-Appellee.
_____

Appeal from the Iowa District Court for Johnson County, Lars G. Anderson, Judge.

Jason Gronstal appeals the denial of his application for postconviction relief, asserting his trial counsel provided ineffective assistance. **AFFIRMED.**

John J. Bishop, Cedar Rapids, for appellant.

Thomas J. Miller, Attorney General, and Tyler J. Buller, Assistant Attorney General, for appellee State.

Considered by Danilson, C.J., and Doyle and McDonald, JJ.

**DOYLE, Judge.**

While waiting with other inmates in a hospital's holding area, inmate Jason Gronstal exposed himself to a female inmate. Ultimately, Gronstal was charged with indecent exposure, a serious misdemeanor, in violation of Iowa Code section 709.9 (2011), and he was appointed counsel.

The matter proceeded to trial before a jury, and the female inmate testified that while she was waiting for her appointment, she

> heard a noise that distracted [her]. And a fellow was tapping his foot on the floor, and [she] looked up. And when [she] looked up, [the man sitting across from her, Gronstal,] winked at [her] and looked down; and when he looked down, he had his privates exposed and began to masturbate.
> . . . .
> He had a magazine in his hand that he held . . . up in front of what he was doing . . . because there [were] four guards in the area. If one of them had looked, he would be as though he was reading his magazine.

The female inmate testified she was disgusted and embarrassed, so she told the correctional officer and asked the officer to turn her chair around so she could face the wall. A hospital security employee testified that there was a surveillance camera in the holding area, and about ten to fifteen minutes after the exposure incident was reported to him, he pulled the video recording of the incident and reported the incident to other officials. The video was played for the jury.

Gronstal testified in his defense. Gronstal admitted he did not have any verbal communication with the female inmate, but he testified they communicated through nonverbal gestures, including "looking at each other, . . . just kind of acknowledging each other was there." He testified he

mentioned to the female inmate, "through nonverbal gestures, that [he] may have wanted to see if she would flash [him]." He further explained:

> I nodded at her, you know. She kind of—she smiled back. And I just, you know, like that, like, Hey; kind of like you would see at Mardi Gras, you know, Hey (indicating).
>
> Umm, and, you know, before—You know, when I was doing that, she just kept looking at me, you know. And she—she didn't really, like—She didn't say yes out loud; she didn't say no. She kind of went like that (indicating) and motioned down with her head at me. And although I probably wasn't on—I probably wasn't thinking too clearly, you know, I figured that's what she wanted. She wanted reciprocation, possibly.
>
> So, like we said, I am currently an inmate; and yes, it has been awhile since I've seen any regular female, besides the corrections officer which, you know, we don't really communicate with corrections officers unless there would be some kind of emergency. So I thought maybe, from her actions, that if I did this, maybe I would see what I asked to. This is not something that is on my normal agenda.
>         . . . .
>         . . . I thought from both of our actions to each other prior to the incident, acknowledge—acknowledging each other, you know, making—making eyes at each other, however—whatever you want to call it, and then her motioning down when I asked to see her breast, that it was going to be a two-sided thing. You have to do this before I do this for you.

Gronstal testified he believed the female inmate wanted him to pull his penis out of his pants, and he admitted that he took out his penis, touched it in so doing, and "may have waved it" but denied masturbating. He did not believe his actions were offensive to her because "she continued to look at [him] for a little bit and then called the guard. That's when she looked away. She continued to look at [him]." The jury found Gronstal guilty as charged, and we affirmed his conviction and sentence on direct appeal. *See State v. Gronstal*, No. 13-0131, 2014 WL 667695, at *2 (Iowa Ct. App. Feb. 19, 2014).

In 2014, Gronstal filed an application for postconviction relief (PCR), asserting his trial counsel provided ineffective assistance in several respects. A trial on Gronstal's application was subsequently held, and Gronstal testified he was not satisfied with his trial counsel's representation. Because Gronstal's trial counsel had passed away since Gronstal's conviction, trial counsel could not defend himself or dispute Gronstal's claims.

Gronstal testified he told his trial counsel another inmate had been sitting next to him the day of the incident, and if called to testify, that inmate would have testified that "he didn't observe [Gronstal] doing anything that [he] shouldn't have except for the one thing and that—that there was conversation between [him] and the [female inmate]," which would corroborate Gronstal's defense that the female inmate was a willing participant. However, Gronstal admitted he did not know if that inmate saw anything. Gronstal also complained that trial counsel did not depose any witnesses and claimed the depositions were necessary to give Gronstal and his counsel

> time to figure out what—what people are going to testify to so that [they could] come up with an—at least a strategy. . . . [Gronstal] could have told [his trial counsel] to bring up that there was another person that was there at the time. . . . [T]here [was] a lot of stuff [Gronstal] could have had him bring up . . . .

Gronstal testified he believed there was more than one video camera monitoring the holding room at the hospital, and from another video angle, his counsel "could attempt to visually see what the communication between [Gronstal and the female inmate] was" to show that that female inmate was a willing participant and to discredit her testimony. But Gronstal admitted he did not know if there were any other cameras in the room, and no evidence beyond Gronstal's speculation

was presented to establish there were other cameras in the room. Gronstal also argued his trial counsel should have impeached the female inmate's testimony based upon her criminal history, but he admitted that the prosecutor stated in her opening statement that the female inmate was a felon who was serving a prison sentence at Mitchellville. Gronstal also admitted he did not know if any of the female inmate's convictions were crimes of dishonesty or of that nature. Thereafter, the PCR court filed its ruling denying Gronstal's application.

Gronstal appeals the PCR court's ruling, arguing the court erred in finding he did not establish that his trial counsel was ineffective. Our review is de novo, and to succeed on his claims, Gronstal was required to show "both that counsel failed an essential duty and that the failure resulted in prejudice." *State v. Schlitter*, 881 N.W.2d 380, 388 (Iowa 2016). If Gronstal cannot establish both elements, his claims fail; thus, if we find either element lacking, we need not address the other element. *See id.*

The PCR court resolved the matter on the prejudice component, which requires the PCR applicant "to show the attorney's errors functionally deprived the defendant of a fair trial and further show by a reasonable probability that the result of the proceeding would have been different without the errors by the attorney." *Id.* The PCR court concluded that Gronstal failed to establish there was a reasonable probability that the result of the proceeding would have been different without the attorney's alleged errors, and upon our review of the record, we agree with its conclusions.

A defense attorney's duty to investigate and prepare a defense is not limitless. *See Luke v. State*, 465 N.W.2d 898, 901 (Iowa Ct. App. 1990).

Moreover, when complaining about the adequacy of an attorney's representation, it is not enough for the applicant to simply claim that counsel should have done a better job. *See State v. White*, 337 N.W.2d 517, 519 (Iowa 1983). Just as we will not predicate error on speculation, *see State v. Belt*, 505 N.W.2d 182, 185 (Iowa 1993), we will not predicate a finding of ineffective assistance on speculation. Finally, an attorney "can hardly be found ineffective for failing to obtain nonexistent evidence." *Luke*, 465 N.W.2d at 902.

Here, Gronstal's claims that his trial counsel's investigation was deficient are not supported by the record. But even assuming that a more rigorous investigation could have been performed by his trial counsel, Gronstal has not provided any evidence beyond his own mere speculation that additional evidence could have been found. Notably, Gronstal admitted that he did not know if his alleged "eyewitness" knew anything at all about the incident or if there was another camera in the holding area. This speculation is simply insufficient to satisfy the reasonable-probability-of-a-different-outcome test. *See Ledezma v. State*, 626 N.W.2d 134, 141 (Iowa 2001) ("The applicant must also prove he was *actually* prejudiced by the alleged error."). We agree with the PCR court that Gronstal failed to show he was prejudiced by his trial counsel's investigation in the case, and his claim of ineffective assistance on this basis fails.

Additionally, we agree with the PCR court that "[h]ad trial counsel done more to impeach [the female inmate] with her felony conviction, there is no reasonable probability it would have changed the outcome of the trial." Certainly, we can understand Gronstal's desire to discredit her testimony, as her testimony was the crux of the prosecution's case against him. But as the PCR court found,

"[t]he jury knew she had a criminal conviction and that she was in custody when the incident occurred. The specifics of that conviction (of which this court was provided no information) would have added little more to what the jury already knew." Gronstal failed to show he was prejudiced by his trial counsel's failure to further discredit the female inmate's testimony based upon her criminal history, and his claim of ineffective assistance fails on this point.

For the foregoing reasons, Gronstal did not establish his trial counsel provided him ineffective assistance. Accordingly, we affirm the ruling of the PCR court denying Gronstal's PCR application.

**AFFIRMED.**